UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE HERRADA,

     Applicant,

v.                                         CASE NO. 8:21-cv-1581-SDM-SPF

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

Herrada applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 2) and challenges his convictions for sexual battery on a child under twelve years of age, for which he was sentenced to life imprisonment. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 7-2) The respondent concedes that the application is timely but argues that some grounds are unexhausted and procedurally defaulted. (Doc. 6)

## I. BACKGROUND

Between 2006 and 2007, E.L. and J.H. lived with Herrada in St. Petersburg, Florida. J.H. is Herrada's biological daughter; E.L. is J.H.'s half-sister. While they lived in St. Petersburg, Herrada repeatedly forced E.L. to perform oral sex on him. During the first incident, Herrada was sitting on a recliner in the living room. E.L. walked in front of him on her way to the bathroom. He grabbed her arm and told her to "suck his dick." (Respondent's Exhibit 3 at 655) When E.L. refused, Herrada

forced her onto her knees and "put his penis in [her] mouth." (Respondent's Exhibit 3 at 655) Similar incidents occurred five to ten times in the St. Petersburg house. E.L. was eight years old at the time.

In June 2007, Herrada lost custody of the girls after he struck J.H. in the face. Sometime later, J.H. visited Herrada at his house. While the two were watching a movie in bed, J.H. began to suck her thumb, a habit that angered Herrada. He told her that she "would have to suck his penis or he would lock [her] in the bathroom." (Respondent's Exhibit 3 at 784) "[S]cared to be locked in the bathroom," J.H. complied. (Respondent's Exhibit 3 at 784) She was six or seven years old at the time.

Neither E.L. nor J.H. disclosed the abuse when it occurred. E.L. testified that she "didn't think [anyone] would believe [her]," that she was afraid of Herrada, and that she feared she and J.H. would "get separated." (Respondent's Exhibit 3 at 662–63) J.H. likewise stated that she delayed disclosing the abuse because she was "scared of the situation." (Respondent's Exhibit 3 at 787)

In 2010, E.L. and J.H. were living with their grandmother, Perla Lleras. Shortly before receiving her "seventh grade shots," E.L. disclosed the abuse to Lleras. (Respondent's Exhibit 3 at 664) According to E.L., she and Lleras reported Herrada's conduct to "the doctors" and the Department of Children and Families. (Respondent's Exhibit 3 at 744) However, the record contains "no report of such a disclosure." (Doc. 13 at 49) Two years later, in February 2012, E.L. and Lleras

disclosed the abuse to law enforcement.  An investigation ensued and Herrada was charged with two counts of sexual battery on a child under twelve years of age.

Herrada elected to proceed *pro se* with the assistance of standby counsel.  A jury found him guilty as charged, and the trial court sentenced him to life imprisonment.  (Respondent's Exhibit 2 at 105–13)  The appellate court affirmed the convictions without a written opinion.  (Respondent's Exhibit 9)  Herrada unsuccessfully sought post-conviction relief under Florida Rule of Criminal Procedure 3.850.  (Respondent's Exhibit 15 at 49–59; Respondent's Exhibit 17)  This federal habeas application followed.  (Docs. 1 & 2)

## II.  EXHAUSTION AND PROCEDURAL BAR

The respondent argues that ground one, sub-claim B of ground two, ground three, and ground four are barred from federal review because Herrada failed to exhaust his state court remedies.  (Doc. 6 at 13, 21–23)  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").  An applicant must present to the federal court the same claim presented to the state court.  *See Picard*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same

claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Henry*, 513 U.S. at 366.

As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, an applicant must alert the state court that he is raising a federal claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

"It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Consequently, "a petitioner with a claim that could arise under state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015).

## Ground One:

Herrada argues that the trial court violated the Sixth Amendment (1) by failing to ensure that he voluntarily waived his right to counsel and (2) by forcing him to "choose between self-representation [and] attorney ineffectiveness." (Doc. 2 at 3–4) According to Herrada, the trial court neglected to "provide a constitutionally adequate inquiry into [his] desire to be properly represented by a competent attorney." (Doc. 2 at 4) Herrada raised similar allegations in his Rule 3.850 motion, but he failed to make the state court aware that he intended to assert a federal claim. Herrada did not argue that the trial court's alleged errors violated any federal right.

Nor did he cite any provision of the federal constitution. Instead, Herrada relied solely on Florida law to argue that the trial court failed to "ask [him] what was his reason for" discharging trial counsel. (Respondent's Exhibit 15 at 10–12) Because Herrada did not "fairly present" his federal claim to the state court, ground one is unexhausted. *See Baldwin*, 541 U.S. at 27; *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012) ("In other words, 'to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'") (quoting *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007)).

**Ground Two, Sub-Claim B and Ground Three:**

In ground two, sub-claim B, Herrada argues that the prosecution violated his right to due process by making improper remarks in closing argument. (Doc. 2 at 9–10) Herrada complains that the prosecution (1) described the victims' statements as "quality testimony," (2) noted that the lead detective "believed the victims," and (3) attempted to discredit Herrada's testimony by referring to his acting career. (Doc. 2 at 9) In ground three, Herrada argues that appellate counsel rendered ineffective assistance by failing to challenge the alleged "instances of prosecutorial misconduct" on direct appeal. (Doc. 2 at 10) Herrada failed to raise these two claims in state court. Consequently, ground two, sub-claim B and ground three are unexhausted.

**Ground Four:**

Herrada contends that standby counsel rendered ineffective assistance by failing to file a motion for a new trial based on several instances of alleged

prosecutorial misconduct. (Doc. 2 at 11–12) Herrada correctly concedes that he did not raise this claim in state court. (Doc. 2 at 12) As a consequence, ground four is unexhausted.

Because ground one, sub-claim B of ground two, ground three, and ground four are unexhausted, they are barred from federal review absent a showing of "actual cause and prejudice" or a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."). The basis for "cause" must ordinarily reside in something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the applicant must establish "not merely that the errors . . . created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). A fundamental miscarriage of justice occurs only if a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *House v. Bell*, 547 U.S. 518, 536–37 (2006).

**Actual Innocence:**

Herrada asserts that his actual innocence excuses the procedural defaults. (Doc. 15 at 1–2)  "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  "To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.  "'[T]he habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'"  *Rozzelle v. Sec'y, Fla. Dep't Corrs.*, 672 F.3d 1000, 1017 (11th Cir. 2012) (quoting *House*, 547 U.S. at 538).

Herrada fails to satisfy the "exceedingly narrow" actual-innocence exception. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  Herrada claims that E.L. "recanted" her allegations shortly after she first disclosed the abuse in 2010.  (Doc. 15 at 6)  He cites a report prepared by a Child Protection Investigations ("CPI") caseworker in April 2012.  (Doc. 13 at 3–4)  The report states that, according to the victims' grandmother, E.L. first disclosed the abuse "when [the grandmother] took the child to get a physical exam" in 2010.  (Doc. 13 at 4)  The grandmother

"immediately reported [the abuse] but the child recanted."  (Doc. 13 at 4)  The CPI

report does not elaborate on the alleged recantation, which occurred approximately

two years before the disclosures that led to charges against Herrada.

The CPI report does not establish Herrada's entitlement to the actual-

innocence exception.  First, the report is not "new evidence" because Herrada had

access to the document at trial.  *See Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir.

2005) ("Evidence is only 'new' if it was not available at trial and could not have been

discovered earlier through the exercise of due diligence.").  Before jury selection

began, Herrada presented the court with a copy of the report.  (Respondent's Exhibit

3 at 62–63)  And during cross-examination of the lead detective, Herrada referred to

the report and asked whether E.L. had ever "recanted" her allegations of abuse.

(Respondent's Exhibit 3 at 593–94)  The lead detective answered, "Absolutely not."

(Respondent's Exhibit 3 at 594)  Herrada cannot rely on the CPI report to establish

his actual innocence because that document was available to him at trial.  *See*

*Goldblum v. Klem*, 510 F.3d 204, 226 n.14 (3d Cir. 2007) ("Evidence is not 'new' if it

was available at trial, but a petitioner merely chose not to present it to the jury.").

Second, even if the report had been admitted at trial, a reasonable juror still

could have found Herrada guilty.  The jury heard evidence that E.L. delayed

disclosing the abuse for several years.  E.L. explained that she "didn't think [anyone]

would believe [her]," that she was afraid of Herrada, and that she feared she and J.H.

would "get separated."  (Respondent's Exhibit 3 at 662–63)  Despite the delayed

disclosure, the jury found Herrada guilty beyond a reasonable doubt.  A reasonable

juror could conclude that E.L. recanted her allegations in 2010 not because the allegations were false, but because she remained afraid of the consequences of disclosure. Therefore, Herrada fails to show that in light of the CPI report, no reasonable juror "would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386.

Also, Herrada argues that he is actually innocent because the victims previously "made false allegations" of physical abuse to "manipulate the custody battle" between him and the victims' mother. (Doc. 15 at 3, 7) Herrada lost custody of the children in June 2007 after he struck J.H. in the face. Herrada appears to contend that he did not physically abuse J.H., but his exhibits contradict that assertion. For example, Herrada submits a June 2007 police report that recounts his "[p]ost-*Miranda* admission" that he "popped [J.H.] in the mouth" because she was "sucking her thumb." (Doc. 13 at 45) Likewise, a June 2007 CPI report states that Herrada "popped [J.H.] in the mouth, which he now regrets." (Doc. 13 at 11) Herrada's unsupported assertion that the victims previously made false accusations of physical abuse does not establish his actual innocence.

Regardless, any false allegation of physical abuse would serve only to impeach the victims' testimony. Impeachment evidence "is a step removed from evidence pertaining to the crime itself" and thus "provides no basis for finding" actual innocence.[1] *Calderon v. Thompson*, 523 U.S. 538, 563 (1998); *see also Sawyer v.*

---

[1] Herrada also asserts that the victims offered "internally inconsistent accounts of what purportedly transpired." (Doc. 15 at 2) But any inconsistencies in the victims' accounts would amount to impeachment material, which is insufficient to show actual innocence.

*Whitley*, 505 U.S. 333, 334 (1992) ("Latter-day impeachment evidence seldom, if ever, makes a clear and convincing showing that no reasonable juror would have believed the heart of the witness' account."); *Reeves v. Fayette SCI*, 897 F.3d 154, 161 (3d Cir. 2018) ("[M]ere impeachment evidence is generally not sufficient to satisfy the [actual-innocence gateway] standard."); *Esty v. Sec'y, Fla. Dep't of Corr.*, No. 15-13574-B, 2017 WL 3393405, at *4 (11th Cir. Mar. 10, 2017) (noting that "impeachment material . . . is not sufficient to show actual innocence").

In short, none of Herrada's "new" evidence "raise[s] sufficient doubt about [his] guilt to undermine confidence in the result of the trial." *Schlup*, 513 U.S. at 317. Therefore, the actual-innocence exception does not excuse Herrada's procedural defaults.

**Cause:**

Herrada asserts that, under *Martinez v. Ryan*, 566 U.S. 1 (2012), the absence of post-conviction counsel serves as cause to excuse the procedural default of ground four.  (Doc. 1 at 12)  *Martinez* holds that an applicant may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective" and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit."  *Martinez*, 566 U.S. at 14, 17.  An applicant shows that his defaulted claim is "substantial" under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"  *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331

(11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269–70 (11th Cir. 2014)).

Martinez does not excuse the default of ground four because the underlying ineffective-assistance claim is not "substantial." *Martinez*, 566 U.S. at 14. Herrada asserts that standby counsel was ineffective for failing to move for a new trial based on several instances of alleged prosecutorial misconduct. (Doc. 1 at 11–12) But a defendant has no constitutional right to standby counsel after he waives his Sixth Amendment rights. *See United States v. Oliver*, 630 F.3d 397, 413 (5th Cir. 2011) ("[A]s a *pro se* defendant, Oliver had no constitutional right to standby counsel."). And "without a constitutional right to standby counsel, a defendant is not entitled to relief for the ineffectiveness of standby counsel." *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998); *see also Fowler v. Sec'y*, No. 8:20-cv-2932-CEH-TGW, 2024 WL 916531, at *4 (M.D. Fla. Mar. 4, 2024) ("[Petitioner] cannot show that his standby counsel's alleged ineffectiveness resulted in a violation of his federal constitutional right to effective counsel."). Because Herrada voluntarily waived his right to counsel, he cannot prevail on a claim that standby counsel was ineffective. Consequently, *Martinez* does not excuse the default of ground four.

## III. <u>MERITS</u>

As determined above, ground one, sub-claim B of ground two, ground three, and ground four are barred from federal review. Herrada's sole remaining ground (sub-claim A of ground two) is exhausted and entitled to a review on the merits.

**Standard of Review:**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding. *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir.

1998). Section 2254(d), which creates a highly deferential standard for federal court

review of a state-court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to,
> > or involved an unreasonable application of,
> > clearly established Federal law, as determined
> > by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in
> > light of the evidence presented in the State
> > court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power
> of a federal habeas court to grant a state prisoner's
> application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court. Under §
> 2254(d)(1), the writ may issue only if one of the following
> two conditions is satisfied — the state court adjudication
> resulted in a decision that (1) "was contrary to . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal
> law, as determined by the Supreme Court of the United
> States." Under the "contrary to" clause, a federal habeas
> court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially

> indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable[;] . . . an unreasonable application is different from an incorrect one."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question . . . ."); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "[AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion, the appellate court on direct appeal affirmed Herrada's convictions. (Respondent's Exhibit 9) The appellate court's *per curiam* decision warrants deference under Section 2254(d)(1) because "the

summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), *and Bishop v. Warden*, 726 F.3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state-court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court.

Herrada bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but

not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001).

### Ground Two, Sub-Claim A:

Herrada asserts that the prosecution violated his right to due process by improper remarks during "both opening statements and closing argument."  (Doc. 2 at 5)  According to Herrada, the prosecution (1) "repeatedly and improperly inflamed the passions of the jurors by appealing to their emotions and asking them to have sympathy for the two child accusers," (2) "improperly vouched for the credibility of the child accusers," and (3) "implied to the jury that they could and should return a verdict for a reason other than [] finding" proof beyond a reasonable doubt.[2]  (Doc. 2 at 5)  The appellate court rejected this claim in a *per curiam* decision without a written opinion.  (Respondent's Exhibit 9)  Consequently, Herrada must show that the state court's decision possessed "no reasonable basis."  *Richter*, 562 U.S. at 98.  He cannot meet his burden.

"The reversal of a conviction . . . is warranted when improper comments by a prosecutor have so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Parker*, 244 F.3d at 838.  "To find prosecutorial misconduct, a two-pronged test must be met:  (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant."

---

[2] In sub-claim B of ground two, Herrada alleges that the prosecution argued improperly during the summation.  As determined above, Herrada failed to challenge those remarks in state court, rendering the claim unexhausted and procedurally defaulted.  By contrast, Herrada raised on direct appeal the allegedly improper remarks challenged in sub-claim A of ground two.

*United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991).  "A prosecutor's remarks, suggestions, insinuations, and assertions are improper when they are calculated to mislead or inflame the jury's passions."  *United States v. Azmat*, 805 F.3d 1018, 1044 (11th Cir. 2015).  "Substantial rights are prejudiced when there is a reasonable probability . . . that, but for the remarks, the outcome of the trial would have been different."  *United States v. Nerey*, 877 F.3d 956, 970 (11th Cir. 2017).

Herrada argues that the prosecution improperly stated (1) that E.L. would "come in here . . . and tell you the uncomfortable details of what [Herrada] did to her," (2) that J.H. "unfortunately" "remember[ed]" details of Herrada's abuse, (3) that E.L. answered "painful and kind of difficult questions" on direct examination, (4) that the victims would "probably . . . never forget" the "things that they testified to," (5) that the victims displayed "emotion" while testifying and "didn't like having to recall this heinous act that was committed upon them," (6) that testifying about the abuse "might be the hard thing to do," and (7) that "nothing seemed enjoyable about what [the victims] went through at the hands of [Herrada]." (Doc. 2 at 5–7)

A "reasonable jurist" could conclude that these remarks were not improper. *Brooks v. Comm'r, Alabama Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013). "Although a prosecutor may not make an argument directed to passions or prejudices of the jurors instead of an understanding of the facts and law, there is no prohibition on colorful and perhaps flamboyant remarks if they relate to the evidence adduced at trial." *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997)

(citation omitted).  The challenged remarks "alluded to horrific facts, but these were the facts [] admitted into evidence and necessary for establishing the elements of the crimes charged against [Herrada]."  *United States v. Boyd*, 640 F.3d 657, 671 (6th Cir. 2011).  Moreover, because the victims' testimony "would naturally and inevitably evoke deep sympathy from the jury, [the prosecution's] comments were not likely to evoke to any further appreciable degree the jury's sympathy for the victims."  *United States v. Johnson*, 495 F.3d 951, 980 (8th Cir. 2007).  Therefore, a reasonable jurist could conclude that the prosecution did not overstep when it drew the jury's attention to the egregious character of Herrada's offenses.  *See United States v. Susi*, 378 F. App'x 277, 283 (4th Cir. 2010) ("There is [] no evidence that the prosecutor's statements that, for example, the crime was 'horrific' . . . crossed the line of vigorous advocacy.").

Also, Herrada contends that the prosecution improperly offered "personal opinions as to the truth and veracity of the [] victims."  (Doc. 2 at 7)  Specifically, the prosecution stated (1) that the victims "had an accurate memory about [Herrada's] penis in their mouth," (2) that the victims' testimony "seemed honest and straightforward," (3) that the victims took an oath "to tell the truth," and (4) that "we know what happened" — "a sexual battery on young girls under the age of 12 by [Herrada,] who is over the age of 18."  (Doc. 2 at 8)

A reasonable jurist could conclude that these remarks were not improper.  "A prosecutor's remarks are improper if they attempt to bolster the credibility of a witness based on the government's reputation or through alluding to evidence not

admitted at trial." *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009). "To determine if the government improperly vouched for a witness, the court must decide whether a jury could reasonably believe that the prosecutor was indicating a personal belief in the witness'[s] credibility." *Lopez*, 590 F.3d at 1256. "This prohibition against vouching does not, however, forbid prosecutors from arguing credibility; rather, it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." *Lopez*, 590 F.3d at 1256.

The challenged remarks did not "amount to an explicit, personal guarantee of credibility, such as assuring the jury that the prosecution would not have brought the case unless the defendant was actually guilty." *United States v. Hernandez*, 921 F.2d 1569, 1573 (11th Cir. 1991). Instead, the remarks invited the jury to find the victims credible "based on [their] behavior on the stand and the evidence admitted." *United States v. Hope*, 608 F. App'x 831, 841 (11th Cir. 2015). For example, the prosecution argued that the victims "had an accurate memory about [Herrada's] penis in their mouth" because those incidents would stand out amid "a slew of other things that went on in these young girls['] lives." (Respondent's Exhibit 3 at 1427) Likewise, the prosecution asserted that the victims' testimony "seemed honest and straightforward" because they "didn't try beating around the bush" despite the "embarrass[ment]" they appeared to experience on the stand. (Respondent's Exhibit 3 at 1427–28) "[A]n attorney is allowed to argue . . . credibility of witnesses or any

other relevant issue so long as the argument is based on the evidence."[3] *Miller v. State*, 926 So. 2d 1243, 1254–55 (Fla. 2006).

Lastly, Herrada contends that the prosecution "unfairly shifted the burden of proof" by making the following remarks (Doc. 2 at 7; Respondent's Exhibit 3 at 1457–58):

> A speculative, a forced, an imaginary doubt should not cause you to return a verdict of not guilty if you have an abiding conviction of guilt. That feeling you get when you think about [E.L.] sitting here under oath explaining how [] Herrada ejaculated into her hand when she was so young; that feeling you get in the pit of your stomach when you think about that testimony, that's an abiding conviction of guilt. That feeling you get when you think about [J.H.] sitting here with tears in her eyes, literally, as she told you what happened as she answered those difficult questions that she had to be asked about what [Herrada] did to her, that feeling you get, that's an abiding conviction of guilt. And that's an abiding conviction of guilt, and that means [Herrada] is guilty.

Even assuming these remarks misstated the burden of proof, Herrada is entitled to no relief because the remarks did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Following closing arguments, the court instructed the jury (1) that the presumption of innocence "stays with [Herrada] as to each material allegation in the [i]nformation through each stage of the trial unless it has been overcome by the evidence[] to the exclusion of and beyond a reasonable doubt,"

---

[3] The prosecution's statement that "we know what happened" did not "amount to an explicit, personal guarantee of credibility." *Hernandez*, 921 F.2d at 1573. In context, "[t]he prosecutor merely used the words 'we know' to refer the jury to the government's evidence and to summarize the government's case against [Herrada]." *United States v. Lahey*, 55 F.3d 1289, 1299 (7th Cir. 1995).

(2) that the prosecution had "the burden of proving [that] the crime with which [Herrada was] charged was committed and [that Herrada was] the person who committed the crime," and (3) that Herrada "was not required to present evidence or prove anything."  (Respondent's Exhibit 3 at 1468)  "[J]urors are presumed to follow the court's instructions."  *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001). Consequently, a reasonable jurist could conclude that any potential prejudice from the prosecution's remarks was "cured by [the] court's instruction regarding the burden of proof."[4]  *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992); *see also United States v. Zitron*, 810 F.3d 1253, 1259–60 (11th Cir. 2016) ("[T]he court's instruction that [defendant] did 'not have to prove his innocence or produce any evidence at all' and that the government had to 'prove guilt beyond a reasonable doubt' cured any prejudice that may have resulted from [the potentially burden-shifting] comments.").

## IV. <u>CONCLUSION</u>

Herrada's amended application for the writ of habeas corpus (Doc. 2) is **DENIED**.  The clerk must enter a judgment against Herrada and **CLOSE** this case.[5]

---

[4] Herrada complains that the prosecution "urge[d] the jury to hold [him] responsible" for his crimes.  (Doc. 2 at 7)  This comment was not improper.  *See Bell v. State*, 108 So. 3d 639, 649 (Fla. 2013) (holding that prosecutor did not overstep in urging jury to "hold the defendant responsible for the crimes he committed and . . . reflect so in your verdict of guilty as charged"); *Houart v. Sec'y, Dep't of Corr.*, No. 8:14-cv-1034-CEH-MAP, 2017 WL 4003759, at *9 (M.D. Fla. Sept. 12, 2017) (state court reasonably concluded that "asking the jurors to hold the [d]efendant accountable is neither improper nor misleading, and is a permissible statement in a prosecutor's closing argument").

[5] To the extent that Herrada requests appointment of counsel in his reply (Doc. 15 at 8–9), that request is denied.  *See Hooks v. Wainwright*, 775 F.2d 1433, 1438 (11th Cir. 1985) ("[T]here is no automatic constitutional right to representation in a federal habeas corpus proceeding.").

## CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Because Herrada fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate both the merits of the grounds and the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).  Herrada must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on May 14, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE